**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN JAMAL WILLIFORD, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-4608 |
| | : | |
| STATE OF PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

KENNEY, J.                                                    OCTOBER 14, 2025

Plaintiff Steven Jamal Williford, an inmate incarcerated at the Lehigh County Jail

("LCJ"), initiated this civil rights action by filing a *pro se* Complaint asserting constitutional

claims pursuant to 42 U.S.C. § 1983, as well as claims under state law. Williford also seeks

leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Williford

leave to proceed *in forma pauperis*. On statutory screening pursuant to 28 U.S.C. §

1915(e)(2)(B), the Court determines that some claims are plausible and can be served, but all

other claims must be dismissed.

**I.      FACTUAL ALLEGATIONS**[1]

Williford names the State of Pennsylvania, the City of Allentown, the Lehigh County

Department of Corrections ("DOC"), the LCJ Mail Room, and the following Lehigh County

---

[1] Williford used three pages of a form complaint available to unrepresented litigants to
file his Complaint ("Compl.") and attached thirty-four additional handwritten pages. (ECF No.
3.) He also attached an exhibit consisting of sixty-two pages. (ECF No. 3-1.) The Court
considers the entirety of the submission to constitute the Complaint and adopts the sequential
pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this
Memorandum are taken from Complaint. Where the Court quotes from the Complaint,
punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider
matters of public record when conducting a screening under § 1915. *See Buck v. Hampton Twp.
Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see also Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1
(3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").

employees and former employees (collectively referred to as the "Lehigh County Defendants"):

Director Janine Donate, Warden Kyle Russel, Warden of Treatment Sarah Jarosz, Warden of

Security Robert McFadden, Grievance Coordinator Cliff Knappenberger, Retired Warden of

Treatment Steven Miller, Retired Treatment Supervisors Mike Salters and Mrs. Ramos,

Treatment Supervisor Joshua Leadbetter, Food Manager Carlos Gonzalez, Lieutenant Holly

Sheaffer, Lieutenant Keith Kowal, Sergeant Killey, Sergeant Cardon, Correction Officer ("CO")

Byfield, CO Joseph Paulillo, CO Mickelson Manasse, CO Cristian Quilles, Sergeant Macko,

Sergeant Ransom, and Lehigh County Detective Steven Furlong.  (*See* Compl. at 4-7.)  He also

names PrimeCare Medical, Inc. ("PrimeCare") and its employees Physician Assistant ("PA")

Alyssa Olewine, Licensed Practical Nurse ("LPN") Lisa Snyder, Doctor Ken, Mrs. Megan and

Mrs. Molly (collectively referred to as the "PrimeCare employees." (*Id*. at 6-7.)  Lastly, he

names U.S. Marshal John Doe as a defendant.  (*Id*. at 6.)  Each individual defendant is named in

his or her individual and official capacities.  (*Id*. at 4-7.)

Williford alleges his due process rights have been violated for a variety of reasons over

his nearly five years of incarceration at the LCJ, mainly associated with being assaulted, the

conditions of his confinement, and inadequate medical care.[2]  (*Id*. at 15, 16-37.)  First, he claims

that the LCJ "has a custom in place," where Defendant Director Janine Donate is directing

Defendant Warden Kyle Russel "to retaliate and discriminate against" him, (*id.* at 13), based on

the circumstances surrounding a federal criminal offense with which he is associated.[3]  (*Id.* at

---

[2] After a review of public records, it is unclear if Williford is a pretrial detainee or convicted prisoner in the LCJ.  The Court will treat him as a pretrial detainee on statutory screening.

[3] It appears based on a review of public records that Williford may be referring to a Criminal Complaint filed against him for being a felon in possession of a firearm in this District

16.)  He claims Director Donate is "tolerating and encouraging such behaviors from her staff without disciplining any of them."  (*Id*. at 13.)  He further claims that Warden Russell, as well as Warden of Treatment Jarosz and Warden of Security McFadden, "are directing their lieutenants and sergeants to not help [him] with any of his needs and have a code called 'Williford gets nothing.'"  (*Id*.)  For instance, he claims his legal mail is being withheld and tampered with, (*id*. at 14), and that Donate, Russell, and their supervisory officials "are interfering with a legal procedure."[4]  (*Id*. at 13.)  Specifically, he alleges Russell knows that Williford is "a pro se Plaintiff on a civil claim, 1:23-CV-431,[5] and is withholding his legal documents and won't let him use the law library."  (*Id*.)  He claims Russell and his supervisory officials "are the reason he "could not properly prosecute his case" and why he was "time-barred on a motion to dismiss." (*Id*. at 13-14.)  He also brings claims against Defendants City of Allentown, the "State of Pennsylvania" [sic], and the Lehigh County DOC for negligence and failing to train its employees and inspect the LCJ each year in violation of the Pennsylvania Constitution,[6] which

---

by the U.S. Attorney's Office on April 14, 2020.  *See United States  v. Williford*, No. 20-578 at ECF No. 1 (E.D. Pa.).

[4] The Court does not construe his brief allegations regarding legal mail as a separate claim, but rather as background information provided to explain Defendants' alleged interference with his prosecuting his civil action, which appears to be an access to courts claim under the First Amendment.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").

[5] Public records indicate the case to which Williford refers is *Williford v. Collare, et al.*, No. 23-431 (M.D. Pa.).

[6] Any § 1983 claims brought under the Pennsylvania Constitution must be dismissed. "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."  *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*).  As there is no private right of action for damages under the Pennsylvania Constitution, these claims are not plausible.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *see also Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute

resulted in depriving him of his constitutional rights. (*Id.* at 14.) He specifically mentions in relation to his failure to train claims that when he was in disciplinary segregation, he was unable to use the "phone, law library, or practice his religion, etc." (*Id.*)

Throughout his Complaint, Williford attacks the grievance process at the LCJ claiming the process is "failing" and its employees "will retaliate and discriminate against inmates with illegal acts." [7] (*Id.* at 15.) As a result, he is scared to use the grievance process because he believes the LCJ staff will retaliate against him. (*Id.*) He specifically names Defendant Grievance Coordinator Cliff Knappenberger related to his claims about grievances, alleging that Knappenberger ignored his requests, failed to respond to his grievances, retaliated against him by giving him misconduct reports and blocked phone calls from his family. (*Id.* at 12, 24.) He further alleges that between late April 2024 and May 23, 2024, he had "to perform an unclothed body search over 30 times" and was being harassed and sexually harassed. (*Id.* at 16.) When he

_____

establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[7] Williford appears to also allege claims on behalf of other inmates on at least two instances in his Complaint. (*See id.* at 15, 24.) As a non-attorney proceeding *pro se*, he may not represent other inmates or raise claims on their behalf. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause.") (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)). Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim) (quotations omitted). Accordingly, the Court will dismiss his claims brought on behalf of others without prejudice, and those individuals may file suit if they wish to do so. The Court expresses no opinion on the merits of any such lawsuit.

tried to get help from Defendant Mrs. Ramos, a now-retired treatment supervisor, he claims nothing was done.  (*Id*. at 16.)  He also tried to report these incidents to the Prison Rape Elimination Act ("PREA") hotline,[8] but the phones at the LCJ did not "recognize the number." (*Id*. at 15.)  He claims the Commonwealth of Pennsylvania is liable for these issues at the LCJ. (*Id*. at 15.)

The bulk of Williford's remaining claims stem from his allegation that on January 28, 2025, Defendants Lieutenant Sheaffer, CO Paulillo, CO Manasse, and CO Quilles assaulted and attacked him.  (*Id.* at 17.)  On the day of the alleged assault, at approximately 7:00 P.M., he was told by Defendant CO Byfield that he was getting a new cellmate, who ultimately did not want to be housed with Williford.  (*Id.* at 17.)  Byfield contacted Sheaffer to request a "cell move" for the other inmate.  (*Id*.)  He claims once Sheaffer realized "the cell move had something to do

---

[8] Williford does not clarify if it was another inmate or a prison staff member who sexually harassed him, nor does he provide any factual allegations about the incidents or name a defendant related to sexual harassment.  For this reason, the Court does not construe these allegations as a claim, but rather as background information provided to explain Williford's overall issues with his confinement in the LCJ.  To the extent these claims were intended as a claim under PREA, while the Act "was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action."  *See Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action"); *Frederick v. Snyder Cnty. Prison*, No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (same).  Thus, Williford cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983."  *See Bowens v. Emps. Of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017).  Moreover, to the extent Williford challenges the quality of the investigation into his PREA complaints, he has no freestanding right to such an investigation.  *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.").  Accordingly, any claims premised upon violations of the PREA must be dismissed as a matter of law.

with Mr. Williford, she walked off Unit 30 with malicious intent." (*Id*.) Five minutes later, Williford alleges that Sheaffer returned with Paulillo, Manasse, and Quilles to move him to the RHU for refusing a cellmate. (*Id*. at 17-18.) He tried to explain that he did not refuse the cellmate, but Sheaffer said, "I don't want to hear it, tell it to the Lieutenant at your misconduct hearing." (*Id*.) He alleges he was then taken to a cell where there was a known blind spot so that video cameras could not record in that area. (*Id*.) He claims that, at some point shortly after he was moved, Sheaffer, Paulillo, Manasse, and Quilles proceeded to "assault and attack him with a deadly weapon," (*id*. at 17), and sprayed him "non-stop with mace" at a close range. (*Id*. at 18.) He told them he has asthma and is allergic to mace, which he claims they knew from a previous incident when Sheaffer sprayed him in 2021, (*id*. at 15), but they ignored his medical problems and continued to assault him in violation of their training the LCJ provided. (*Id*. at 19, 33.) He "ended up passing out from the brutal damage" and when he woke up, he alleges that Sheaffer "was on top of him pounding his chest with a closed fist." (*Id*. at 19.) Defendants Sergeant Killey and Sergeant Cardon were allegedly present and failed to protect him. (*Id*.) He also asserts that later that evening, Sheaffer, Killey, Cardon, and other unknown COs returned to his cell, handcuffed him, and moved him to a different cell. (*Id*. at 20.) He alleges that Killey removed his clothes with a sharp object that cut his leg. (*Id*.) He claims he did not receive any medical attention after these events, (*id*. at 19-21), and Sheaffer, Paulillo, Manasse, and Quilles are "responsible for all damages that day because they weren't using any of the training" the Lehigh County DOC provides. (*Id*. at 33.) He filed grievances as a result of the alleged attack and attached the grievances to his Complaint. (*See* ECF No. 3-1 at 4-10.)

The next morning, January 29, 2025, he told Defendant Sergeant Ransom he needed medical care for his asthma and an allergic reaction to the mace, but claims Ransom retaliated

against him and denied his request.  (Compl. at 20.)  Later that morning, Williford asked

Defendant LPN Lisa Snyder for medicine for his injuries, which were blistered lips, a swollen

tongue, bloodshot eyes, and restricted vision.  (*Id*. at 21.)  He claims she denied him care, told

him he must request a sick call and that he was "not allowed in medical."  (*Id*.)  Later that same

day, Williford was scheduled to go to federal court and Defendants Lieutenant Keith Kowal and

Sergeant Macko, with other unknown COs, came to his cell to transport him to the custody of the

U.S. Marshals.  (*Id*. at 21.)  Kowal told Defendant U.S. Marshal John Doe that Williford was

"sprayed real bad last night, and we might have to take him to the hospital."  (*Id*.)  He claims the

U.S. Marshal refused to take custody of him because of his injuries.  (*Id*.)  Before U.S. Marshal

Doe left, he asked Williford if there was anything he wanted him to tell his lawyer or the U.S.

Attorney.  (*Id*.)  He replied, "Yes! Can you please tell my lawyer, the correctional officers are

trying to kill me in here, and I don't feel safe in Lehigh County Jail.  Please get me out of here."

(*Id*.)  U.S. Marshal Doe replied, "ok" and left.  (*Id*.)  Williford claims that U.S. Marshal Doe

failed to protect, intervene, and provide medical care to him.  (*Id*. at 21-22.)

      After U.S. Marshal Doe left, Williford claims he asked Kowal and Macko for medical

attention, but they both refused.  (*Id*. at 22.)  He also asked Macko about his property that was

confiscated when he was moved to the RHU, and she said she would look for it.  (*Id*.)  When

Macko returned, she told him Russell, McFadden, and Jarosz wanted her to search it before

returning it to him.  (*Id*.)  Later that day, his property was returned, and he received a misconduct

report for possession of contraband.  (*Id*.)  He alleges that Macko, Russell, McFadden, and Jarosz

"falsified a misconduct report with planting contraband on [him] to get him more disciplinary

time."  (*Id*.)

      On January 30, 2025, the following day, he claims LPN Lisa Snyder again denied him

medical care after he requested it. (*Id*. at 23.) Hours later, LPN Sky Kline and CO Revees, who are not named as defendants, showed up to examine him. LPN Kline gave him medicine and said she would take him to a PrimeCare Medical provider, but he alleges PrimeCare denied him proper medical attention. (*Id*.)

On February 3, 2025, Williford's misconduct hearing was held by Kowal for charges of an assault on a lieutenant, presumably related to the events that occurred on January 28, 2025, and for possession of contraband, presumably related to the search of his property on January 29, 2025. (*Id*. at 24.) He claims that Kowal admitted procedures and protocols were broken, but Williford should not have reacted the way he did. (*Id*.) He asserts that Kowal gave him "90 days of disciplinary time and falsified documents to make it fit his narrative." (*Id*. at 24-25.) Williford refused to sign the misconduct report, which he attached to his Complaint, (*see* ECF No. 3-1 at 11-14), based on the unfair treatment and because it reflected statements he never made at the hearing. (Compl. at 25.) He also claims that there was no proper investigation into the assault and there were no pictures or drug testing of the alleged contraband. (*Id*. at 25.) He further claims Kowal is biased and "finding inmates guilty of misconducts without evidence to prove guilt." (*Id*. at 24.)

Shortly after his hearing, Kowal and two unknown COs came to his cell to conduct an unclothed body search and drug test, with which he complied. (*Id*. at 25.) Defendant PA Mrs. Molly was also present and after taking his blood pressure told Kowal that Williford's "blood pressure was super high and he was coming down off of intoxication." (*Id*.) Williford told Mrs. Molly he had not received his blood pressure medication and requested medical attention, which she refused. (*Id*.) Shortly after, his property was removed from his cell and placed in a trash bag, and Williford was moved to a cell he claims is known to be used for medical observation of

a suicidal inmate even though he was not suicidal. (*Id*. at 26.) He still has not received his property back, which includes his books, regular and legal mail, religious items, and pictures of his family. (*Id*.)

As a result of the events that occurred on January 28, 2025, he was charged with several counts of criminal aggravated assault. *See Commonwealth v. Williford*, CP-39-CR-0001849-2025 (C.P. Lehigh).[9] Williford alleges that that Defendant Lehigh County Detective Steven Furlong did not properly investigate the case before filing charges and lacked probable cause for his arrest. (Compl. at 31.) He attached the Affidavit of Probable Cause, signed by Furlong, to his Complaint. (*See* ECF No. 3-1 at 52-53.) He asserts he was the victim in the assault and that Furlong, Sheaffer, Paulillo, Manasse, and Quilles fabricated evidence and falsified documents to frame him for the crimes charged. (Compl. at 31.) At his preliminary hearing held on May 28, 2025, he claims that Paulillo, Manasse, and Quilles denied that Williford was sprayed with mace on January 28, 2025, falsely testifying to cover for Sheaffer because she did not follow her training while spraying him with mace too closely. (*Id*. at 32.)

Williford next alleges that PrimeCare "is in violation for a municipal liability for negligence of employees." (*Id*. at 26.) On February 24, 2025, he sent a request to PrimeCare's medical staff manager about his denial of medical care. (*Id*. at 27.) The next day, he was seen by Defendant PrimeCare PA Alyssa Olwine, whom he claims did "not listen and rejected anything [he] said about his damages." (*Id*.) He explained to her that he was recently sprayed with mace and is allergic, causing him to have lower back pain, harm to his vocal cords, blood

---

[9] A review of the public record for this pending case reveals an arrest warrant was issued by a Lehigh County Magistrate Judge and Defendant Detective Furlong was the arresting officer. The record also reveals after the preliminary hearing was held on May 28, 2025, an information was filed and Williford is currently awaiting trial. *Id*.

clots and pain in his eyes, and trouble with his vision.  (*Id*.)  He requested to see an "outside

doctor," but Olwine allegedly refused and would just give him Tylenol.  (*Id*.)  He continued to

complain about his issues for weeks after this visit, resulting in another visit with Olwine.  He

claims on the second visit, Olwine refused to send him to an eye doctor and told him "nothing is

wrong with your eyes, so stop writing medical sick calls!"  (*Id*.)  He told her that she is not an

eye doctor, and he really needs help.  (*Id*.)  He asserted that she responded, "You shouldn't be

attacking staff" and walked away.  (*Id*.)

Williford alleges that in late March he "woke up completely blind in his left eye."  (*Id*. at

28.)  Hours after requesting medical attention, he was seen by a nurse, who explained there was

nothing she could do but place him on a list to see Defendant Doctor Ken, who is the head doctor

of PrimeCare at the LCJ.  (*Id*.)  Later that week, he was examined by Doctor Ken, who said he

would set up an emergency ophthalmology appointment at St. Luke's Hospital.  (*Id*.)  Williford

went to this appointment at St. Luke's Hospital on May 23, 2025, and the doctor was unable to

properly examine him based on the inflammation in his eyes.  (*Id*.)  The doctor gave him

medication and eye drops, and he subsequently returned to St. Luke's Hospital on July 2, 2025.

(*Id*.)  The ophthalmology doctor told him "everything looks good with the inside of his eyeballs

after using the eye drops for a month."  (*Id*.)  He explained to the doctor he was still having the

same problems, so she allegedly requested for him "to see a general eye doctor for the outside of

his eyes."  (*Id*.)  After his appointment, he was seen by Doctor Ken at the LCJ and told him what

the ophthalmologist said.  (*Id*.)  He also explained to Doctor Ken that he was having "major

headaches, pain in both eyeballs, redness in his eyes, and blind to bright lights."  (*Id*.)  He claims

"Doctor Ken did nothing and failed to treat [him] properly."  (*Id*.)

Williford next claims all Defendants are conspiring to deprive him of his rights and

retaliating against him, listing several incidents that leads him to believe the conspiracy is due to the discrimination and retaliation of Lieutenant Sheaffer and COs Paulillo, Manasse, and Quilles. (*Id.* at 34-35.)  For instance, he asserts he has been in the RHU for seven months "not serving disciplinary time for the misconducts." (*Id*. at 34.)  He has monthly Jail Review Committee hearings with Defendants Jarosz and Treatment Supervisor Joshua Leadbetter, as well as other unidentified prison staff. (*Id*. at 35.)  He claims that "Warden Jarosz always states that he is never getting out of the hole, Unit 3C1, and just to get used to it." (*Id*.)  He brings claims related to his conditions of confinement while in disciplinary segregation, alleging he is "not getting proper medical attention, not being able to practice his religion, has no hygiene products, such as toothpaste, deodorize products, lotion for skin, razors to shave, not being able to use the law library, took his legal mail, not being fed properly by the kitchen, not being able to drink out of cups, mental health failure, not being able to visit family or have video visits, no clock on the wall to make prayers, no clean clothes, worn down clothes that have MRSA infections on them and showers and unit not being properly cleaned." (*Id*. at 34.)  He also claims that on February 28, 2025, he asked Treatment Supervisor Leadbetter if he could participate in Ramadan since he is a Muslim.  Leadbetter responded he did not think so because "the higher ups are not giving your religion [items] back, and no to Ramadan!" (*Id*. at 29.)  He next claims Defendant Food Manager Carlos Gonzalez is "using food as a punishment" because he was given food compressed into a loaf for five days that he refused. (*Id*. at 29-30.)  He claims Gonzalez retaliated against him, presumably for filing grievances related to his issues with the food, by giving him leftover meals that are "comparable to eating out of a trash can." (*Id*. at 30.)  This has caused him "significant weight loss and makes it difficult to use the bathroom to where it's leaving blood in the toilet." (*Id*.)  He also claims in June 2025, CO Paulillo spit in his food, and

CO Quilles threatened to give him a misconduct if he refused his food tray.  (*Id*. at 36.)  He has filed several grievances and requests to staff related to his claims and attached many of them to his Complaint.[10]  (*See* ECF No. 3-1 at 4-10, 19-21, 54-61.)

As a result of these events, he alleges a civil conspiracy and constitutional violations for failure to protect, intervene, investigate grievances, provide proper adequate medical care, deliberate indifference, retaliation, discrimination, cruel and unusual punishment, excessive force, illegal search of property, false arrest/imprisonment, malicious prosecution, conditions of confinement, negligence, harassment, and fabrication of evidence.[11]  (*See* Compl. at 8-11.)  He also brings claims under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978) for municipal liability, the Equal Protection Clause and due process violations under the Fourteenth Amendment, and state law.  (*Id.* at 9-10.)  He requests money damages, as well as body cameras and more training to be provided to LCJ employees, for Defendants Sheaffer, Paulillo, Manasse, and Quilles to be fired, and a street sign named after him to be placed at the LCJ employee parking lot.[12]  (*Id.* at 37.)

---

[10] Several of the documents Williford attached are duplicates.  (*See* ECF No. 3-1 at 4-23 and 27-46.)

[11] Williford pleads discrimination under the First Amendment, which the Court construes as a First Amendment retaliation claim for filing grievances.  *See Holley*, 165 F.3d at 248.  It also appears he intended to bring an access to courts claim under the First Amendment as mentioned *supra.*  (*See* fn. 4.)

[12] The Court has no authority to order termination of Defendants' employment as relief. *See Hall v. Carny*, No. 22-4094, 2023 WL 187569, at *1 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice the request that defendant be terminated from his employment); *see also Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *1-2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee).  To the extent Williford alleges a violation of policies and procedures outlined in the facility's handbook, and is requesting the LCJ to provide more training, body cameras, and name a street after Williford as relief, the Court has no authority to

## II.    STANDARD OF REVIEW

The Court grants Williford leave to proceed *in forma pauperis*.[13]  Accordingly, 28 U.S.C.

§ 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this

early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true,

draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint,

liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*,

12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v.*

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556

U.S. at 678.

Because Williford is proceeding *pro se*, the Court construes his allegations liberally.

*Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704

F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when

the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient

---

grant such relief.  A prison's internal policies and practices are not a constitutionally protected
interest actionable under § 1983.  *See Hernandez-Santana v. Little*, No. 24-6447, 2025 WL
2538435, at *5 (E.D. Pa. Sept. 3, 2025) ("a violation of internal prison procedures does not
create a constitutional violation").

[13] Because Williford is a prisoner, he must still pay the $350 filing fee for this case in
installments as required by the Prison Litigation Reform Act.

facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).  An

unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that

apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024

WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations

and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,'

*Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an

advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Williford brings constitutional claims pursuant to § 1983, the vehicle by which federal

constitutional claims may be brought against state actors in federal court, as well as related state

law claims.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged

constitutional violation is a required element, and, therefore, a plaintiff must allege how each

defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.    Claims Against Pennsylvania

States are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of*

*State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits

against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State*

*Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341

F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that

immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, the claims for money damages

Williford seeks to assert against the Commonwealth of Pennsylvania may not proceed.

**B.      Claims Against the Lehigh County DOC and the LCJ Mail Room**

The § 1983 claims against the Lehigh County DOC will be dismissed because a prison is

not a "person" under Section 1983.  *See, e.g., Cephas v. George W. Hill Corr. Facility*, No. 09-

6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr.*

*Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v.*

*Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976).  In addition, a prison department,

such as the LCJ Mail Room, is also not a "person" for purposes of § 1983 liability.  *See, e.g.,*

*Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845-46 (3d Cir. 2011) (*per curiam*) (citing

*Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *Newson v. Mercer Cnty. Corr. Ctr.*, No. 16-

1150, 2016 WL 11659338, at *2 (D.N.J. Dec. 14, 2016) ("Defendant [Mercer County

Correctional Facility Department of Public Safety], a prison department, is also not a 'person'

subject to suit under § 1983."); *Miller v. Cnty. of Chester*, No. 23-3992, 2024 WL 219397, at *6

(E.D. Pa. Jan. 19, 2024) ("Similarly, the prison's Maintenance Department appears to be a

department of [Chester County Prison] and therefore not a "person" subject to suit under 1983.").

Accordingly, Williford's claims against the Lehigh County DOC and the LCJ Mail Room must

be dismissed because the correctional facility and its prison departments are not legal entities

susceptible to suit.  *See Cephas*, 2010 WL 2854149, at *1; *Ruff*, 441 F. App'x at 845-46; *see also*

*Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (*per curiam*) (affirming dismissal

of claims against county prison because even though "[a] local governmental agency may be a

'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being

sued within the meaning of § 1983") (internal citations omitted).

15

### C.    Official Capacity Claims Against the Lehigh County Defendants

Williford names the Lehigh County Defendants in their individual and official capacities. (*See* Compl. at 4-7.)  He appears not to have understood the implication of bringing official capacity claims against them.  Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs them, here Lehigh County.[14]  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Local governments, such as Lehigh County, can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see also Monell*, 436 U.S. at 665-83.  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick*, 563 U.S. at 60.  In other words, municipal liability cannot be predicated on a *respondeat superior* basis.  *See Monell,* 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original).

Rather, to state a claim for municipal liability, a plaintiff must allege that a municipal

---

[14] Even though Williford names the City of Allentown as a defendant, it appears he intended to name Lehigh County, the governmental entity that employees the Lehigh County Defendants.  Liberally construing the Complaint, the Court will address the *Monell* claims related to Lehigh County.  Because Williford does not name any defendants connected to the City of Allentown other than the entity itself, the Court will dismiss it as a defendant since there are no factual allegations plead to infer such a claim.

policy or custom caused the alleged constitutional violation.  *See id.* at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Id.*  However, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."  *Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Williford claims that the LCJ "has a custom in place," whereby Director Donate directs Warden Russel "to retaliate and discriminate against" him, and Warden Russell, as well as Warden of Treatment Jarosz and Warden of Security McFadden, "are directing their lieutenants and sergeants to not help [him] with any of his needs and have a code called 'Williford gets nothing.'"  (Compl. at 13.)  As an initial matter, even had he named Lehigh County as a defendant, the policy or custom that he refers to as "Williford gets nothing" is based solely on incidents involving himself.  A policy allegation based solely on his own personal experiences is not plausible for a *Monell* claim.  *See Phillips v. Northampton Cnty.,* 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (finding municipal liability is not established when a plaintiff has "pleaded no facts to support the existence of any policy, custom, or practice beyond those

involving his own [incidents]."); *see also Fowler v. City of New York*, No. 13-2372, 2019 WL 1368994, at *15 (E.D.N.Y. Mar. 26, 2019), *aff'd*, 807 F. App'x 137 (2d Cir. 2020) (Because plaintiff's alleged constitutional violations concern only himself, coupled with the limited number of alleged violations he brings, as a matter of law he cannot establish a finding of widespread practice supporting a custom or usage theory under *Monell*). He failed to allege sufficient facts to show that Lehigh County had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). Furthermore, Williford's factual allegations are based on the alleged actions of the Lehigh County employees, not Lehigh County itself. *See Pembaur*, 475 U.S. at 479 ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (emphasis in original). Because there is no *respondeat superior* for municipal liability under § 1983, his allegations based on the Lehigh County defendants' individual actions are also not sufficient to state a *Monell* claim against Lehigh County.[15]

---

[15] To the extent Williford intended to bring a claim for a failure to follow the policy of the inmate handbook, such claim not only fails under this same reasoning, but also because many courts have held that corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (*citing Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).

His claims premised under a failure to train theory fails for similar reasons because the underlying basis is again premised on the individual actions of Lehigh County employees. For instance, he alleges that Sheaffer, Paulillo, Manasse, and Quilles "disregarded all their training" when macing him despite his medical problems, (Compl. at 19), and they are "responsible for all damages that day because they weren't using any of the training" the Lehigh County DOC provides. (*Id*. at 33.) His factual allegations related to training are that employees of Lehigh County failed to follow training that was provided to them by Lehigh County, not that Lehigh County failed to train its employees. Even if he named the proper governmental entity in his Complaint as a Defendant, which he did not, Williford fails to allege a *Monell* claim against Lehigh County, and these claims will be dismissed.

### D.    Claims Against PrimeCare

Williford seeks to present claims against PrimeCare for "violation for a municipal liability for negligence of employees." (*Id*. at 26.) He also names the PrimeCare employees in their official capacities, presumably based on his allegations they refused to provide him with medical care.[16] Although a private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances, the United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583) (applying *Monell* to claims against medical contractor).

---

[16] As analyzed *supra*, naming PrimeCare employees in their official capacities is indistinguishable from claims against PrimeCare and will be dismissed as duplicative. *See Graham*, 473 U.S. at 165-66.

Rather, in order to hold a private health care company like PrimeCare liable for a constitutional

violation under § 1983, Williford must allege PrimeCare had "a relevant . . . policy or custom,

and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84

(citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404

(1997)); *see also Lomax v. City of Phila.*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar.

29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health

care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or

policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and

quotations omitted).[17]

Williford does not claim that PrimeCare has a policy or custom that violated a

constitutional right, his claims are based on the alleged actions of its employees. Specifically, he

alleges that PrimeCare employees caused violated his rights by not providing him with adequate

medical care. Because PrimeCare cannot be held responsible for the acts of its employees under

a theory of *respondeat superior* or vicarious liability, Williford's claims against PrimeCare will

be dismissed.

### E.    Claims Against U.S. Marshal John Doe

The Court understands Williford to be attempting to assert *Bivens* claims against U.S.

Marshal John Doe in his individual and official capacity. *Bivens* provides a remedy for certain

---

[17] A plaintiff may also state a basis for liability against an entity like PrimeCare by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest*, 930 F.3d at 106. In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom., Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019). Williford also does not allege factual allegations for this type of a claim.

constitutional violations committed by federal actors.  *See, e.g., Ynfante v. United States*, No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("In contrast to [Federal Tort Claims Act] actions, a *Bivens* claim can only be asserted against individual officials.").  However, "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."  *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Accordingly, the claims against U.S. Marshal Doe in his official capacity is in essence claims against the United States that must be dismissed on sovereign immunity grounds.  *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *see also Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

The individual capacity claims against U.S. Marshal Doe also fail.  Since *Bivens* was decided in 1971, the United States Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses."  *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017); *see also Egbert v. Boule*, 596 U.S. 482, 501 (2022).  The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) Bivens

itself – a claim under the Fourth Amendment against FBI agents for handcuffing a man in his

own home without a warrant, 403 U.S. at 389; (2) a claim under the Fifth Amendment against a

Congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979); and, (3) a

claim under the Eighth Amendment against prison officials for failure to treat an inmate's

asthma, *Carlson v. Green,* 446 U.S. 14 (1980). "To preserve the separation of powers, the Court

has 'consistently rebuffed' efforts to extend *Bivens* further . . . [because] [t]he Constitution

entrusts Congress, not the courts, with the power to create new federal causes of action and

remedies." *Dongarra v. Smith,* 27 F.4th 174, 180 (3d Cir. 2022) (citing *Hernandez v. Mesa*, 589

U.S. 93, 101 (2020)); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two

years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears

to be a full stop and no farther.").

      "Reflecting these concerns, the Supreme Court has set forth a two-step inquiry to

determine the availability of *Bivens* remedies in a particular case." *Kalu v. Spaulding*, 113 F.4th

311, 326 (3d Cir. 2024). "First, [courts] ask whether the 'case presents a new *Bivens* context'—

*i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by'

the Supreme Court"—using only *Bivens*, *Davis*, and *Carlson* as a benchmark as well as a

"broad" understanding of what constitutes a new context. *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S.

120, 139 (2017)). The non-exclusive list of factors to consider here includes:

> the rank of the officers involved; the constitutional right at issue; the generality or
> specificity of the official action; the extent of judicial guidance as to how an
> officer should respond to the problem or emergency to be confronted; the
> statutory or other legal mandate under which the officer was operating; the risk of
> disruptive intrusion by the Judiciary into the functioning of other branches; or the
> presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Abbasi*, 582 U.S. at 139-40).

"Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension[,]'" meaning "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex Cnty.*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up) (quoting *Abbasi*, 582 U.S. at 147-49); *see also Fisher*, 115 F.4th at 206 ("[A] case can differ meaningfully from *Bivens, Davis*, and *Carlson* even when it involves the same constitutional right as one of those cases."). In a recent decision, the Third Circuit has abrogated earlier decisions recognizing that its own extensions of *Bivens* were no longer tenable given recent Supreme Court decisions. *See Fisher*, 115 F.4th at 197 (holding that the Supreme Court decision in *Egbert* "seriously undermines the rationale of *Bistrian* and *Shorter* [12 F.4th at 374]). In another recent decision, the Third Circuit expressly refused to extend *Bivens* to Eighth Amendment conditions of confinement claims brought by federally convicted prisoners. *See Kalu*, 113 F.4th at 340.

If the context is new, courts proceed to the second step of the inquiry, which "ask[s] whether there are 'special factors counselling hesitation' in extending *Bivens*" with a focus "'on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 326 (quoting *Abbasi*, 582 U.S. at 136); *see also Fisher*, 115 F.4th at 205 ("*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action.") (quoting *Egbert*, 596 U.S. at 492). Special attention is given to the existence of an alternative remedial structure and separation-of-powers concerns. *Kalu*, 113 F.4th at 326. If there is any reason to think Congress might be better situated to weigh the costs and benefits of a damages action, courts may not do so. *Id.* at *5. That uncertainty alone forecloses *Bivens* relief. *Id.* at *4. "To sum up, . . . : unless a case is indistinguishable from

*Bivens, Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts." *Id.* at *5.

Based on this framework, no *Bivens* remedy exists for Williford's claims that U.S. Marshal Doe failed to provide him medical care, protect him and intervene after briefly observing his injuries that day after the alleged assault.  (*See* Compl. at 21-22.)  Although *Carlson* also concerned a claim pertaining to a failure to provide medical care, that claim related to a failure to provide care for the inmate's asthma resulting in his death, which is meaningfully different from the claims here.  Because the Supreme Court has never authorized a *Bivens* action for the claim Williford asserts, this case presents a new context.  *See Jordan v. Barves*, No. 24-2030, 2024 WL 4579248, at *2 (3d Cir. Oct. 25, 2024) (*per curiam*) ("As this Court recently explained in applying *Egbert*, *Bivens* actions are cognizable only when the claim presented is 'indistinguishable' from a previously-recognized *Bivens* context.") (quoting *Fisher*, 115 F.4th at 205).

The Court declines to recognize an extension of *Bivens* for Williford's claims.  The Third Circuit has declined to extend *Bivens* remedies to both a non-medical Eighth Amendment claim, *Mammana v. Barben*, 856 F. App'x 411, 415-16 (3d Cir. 2021), and Eighth Amendment claims for failure to protect an inmate from serious harm, or through deliberate indifference to a risk of serious harm, *Kalu*, 113 F.4th at 344-45.  Furthermore, Congress has passed legislation through the Prison Litigation Reform Act of 1995 ("PLRA") addressing the issue of prisoners' constitutional claims.  As the Third Circuit Court explained in *Kalu*, "[b]oth times, the resulting legislation has explicitly omitted an individual capacity damages cause of action against federal officials. This pattern of congressional action—refraining from authorizing damages actions for injury inflicted by federal prison officials—gives us further reason to hesitate about extending

24

*Bivens* in this case." *Id*. at 333 (internal quotation and citation omitted). All that is needed to forestall a *Bivens* extension is "any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Abbasi*, 582 U.S. at 136). Because there is no ground to expand *Bivens*, all claims against U.S. Marshal Doe will be dismissed with prejudice.

### F.    Claims Based on the Fourteenth Amendment

The Court understands Williford to assert Fourteenth Amendment due process claims based on loss of property and negligence.[18] The Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. A plausibility analysis of a procedural due process claim under the Fourteenth Amendment proceeds in two steps. *See Bd. of Regents of*

---

[18] Williford's mere recitation of an equal protection violation under the Fourteenth Amendment claim fails to allege a separate plausible claim. To plead an equal protection violation plausibly, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Williford does not allege that he is a member of a protected class or explain how he was discriminated against based on that membership. He also fails to allege how he was treated differently than other similarly situated inmates who were not in a protected class. *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates" who received accommodations "or that there was no rational basis for his different treatment"); *Beitler v. City of Allentown*, No. 22-104, 2022 WL 768151, at *8 (E.D. Pa. Mar. 14, 2022) ("We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently."). Williford appears, rather, to allege inmates are being treated the same when asserting his issues with the grievance process, (*see* Compl. at 15), and misconduct hearings at the LCJ. (*Id.* at 24.) Accordingly, any equal protection claim will be dismissed.

*State Colleges v. Roth*, 408 U.S. 564, 571 (1972).  First, a court must determine whether a liberty

or property interest exists with which state actors have interfered.  *Ky. Dept. of Corrections v.*

*Thompson*, 490 U.S. 454, 460 (1989) (citing *Bd. of Regents*, 408 U.S. at 571).  Second, if and

only if a protected interest exists, a court must examine whether the procedures attendant upon

that deprivation were constitutionally sufficient.  *Id*.  The underlying liberty interest can be

derived directly from the Due Process Clause or from the state's statutory scheme.  *See Asquith*

*v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from

only one of two sources:  the Due Process Clause or the laws of a state.").  As a threshold matter,

"[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a

procedural due process claim to lie."  *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006)

(citing *Bd. of Regents*, 408 U.S. at 569).

### 1.    Claims Based on Property Loss

Williford alleges his property was confiscated from his cell and not returned.  (*See*

Compl. at 22, 26.)  Unauthorized intentional deprivations of property "[do] not constitute a

violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v.*

*Palmer*, 468 U.S. 517, 533 (1984).  A correctional facility's grievance procedure provides an

adequate postdeprivation remedy for intentional deprivations of property by correctional

employees.  *See Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000)

(holding that prison grievance system provides adequate post-deprivation remedy).  Accordingly,

Williford's due process claim is not plausible because he had an adequate remedy for the

deprivation of his property through the prison grievance system.  *See, e.g.*, *Mbewe v. Delbalso*,

No. 23-2054, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (*per curiam*) (affirming dismissal of

due process claim: "The prison grievance procedure provides an adequate post-deprivation

remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim") (citation omitted); *Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy). "Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *3 n.3 (3d Cir. Apr. 4, 2023) (*per curiam*) ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy."); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Therefore, his claims relating to the loss of his property will be dismissed.

### 2. Claims Based on Negligence

Williford also alleges a negligence claim against Defendants. The Supreme Court has held that § 1983 due process claims may not be predicated on a state actor's mere negligence. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). The Supreme Court's holding that an official's negligent act does not implicate the Due Process Clause has been recognized by the Third Circuit as extending to claims under the First Amendment as well since, "[j]ust as 'deprivation' [in the Fourteenth Amendment context] suggests an intentional denial, an 'abridgement' [under the First Amendment] connotes a conscious act . . . and thus both should be read to imply the same degree of intent." *Ferrone v.*

*Onorato*, 298 F. App'x 190, 193 (3d Cir. 2008) (quoting *Pink v. Lester*, 52 F.3d 73, 76-77 (4th Cir. 1995).  Thus, mere negligence also fails as a basis for a First Amendment claim to the extent he raises such a claim.  *Id*. ("to establish a claim under the petition clause, Ferrone had to show that the Appellees acted "with reckless or intentional indifference to his constitutional rights"; mere negligence will not suffice").  Accordingly, any constitutional claim that Williford intended to raise based on negligent conduct under the First and Fourteenth Amendment is not plausible and will be dismissed.

### G.    Claims Based on Cell Search

Williford also claims his property was illegally searched when it was confiscated from his cell.  (*See* Compl. at 22, 26.)  "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson*, 468 U.S. at 530; *see also Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp,* 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").  Accordingly, his claims relating to the search of his cell will be dismissed.

### H.    Claims Based on the Grievance Process

Williford brings claims against Defendants Warden Russel and Grievance Coordinator Knappenberger for failing to investigate grievances he filed.  (*See* Compl. at 9.)  Any claim brought against these Defendants, or any other defendant, based on the grievance process will be dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*,

259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by Williford predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Furthermore, a prison official's involvement in the grievance process is not sufficient to allege liability under § 1983 for the events that gave rise to the grievance.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability

based on those later grievance reviews.").  All claims based on the handling of grievances will be dismissed with prejudice.[19]

## I.    Malicious Prosecution

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person.  *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 557 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43, and n.2 (2022)).  A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim.  *Chiaverini*, 602 U.S. at 562 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*." (emphasis added)).  A "favorable termination" occurs when a prosecution ends "without a conviction."  *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the

---

[19] The Court notes this dismissal does not extend to Williford's First Amendment retaliation claim based on filing grievances.

criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.").

Williford's malicious prosecution claim is not cognizable in a civil rights action at this time because he has not alleged that the criminal proceedings have terminated in his favor. Indeed, it appears from the public docket and the Complaint that the criminal proceeding has not terminated at all.  A malicious prosecution claim is not cognizable until favorable termination is achieved, because that is when the "favorable termination" element of the cause of action is complete.  *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("Accrual is the occurrence of damages caused by a wrongful act — when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.") (internal quotations omitted); *see also Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989) (agreeing that "because favorable termination was a necessary element of their section 1983 claim, [plaintiffs] neither knew nor had reason to know of the injury that constituted the basis of their actions until such termination, and that, accordingly, their section 1983 actions did not accrue under federal law until such termination").  The Court will therefore dismiss his malicious prosecution claim without prejudice because it has not yet accrued.[20]  *See Hoyle v. Crozier*, No. 22-3049, 2022 WL

---

[20] Williford also claims Paulillo, Manasse, and Quilles testified falsely at his preliminary hearing in his pending state criminal case. (*See* Compl. at 32.)  To the extent he intended to bring claims for these allegations, such claims are not plausible because of absolute witness immunity.  Individuals are entitled to absolute immunity from civil rights claims based on testimony in court, including at pretrial hearings.  *See, e.g, Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("[W]e conclude that grand jury witnesses should enjoy the same immunity as witnesses at trial."); *Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988) (stating that witness immunity is "firmly bottomed in public policy") (citing *Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) (holding that under absolute witness immunity a convicted defendant could not state a claim for damages under § 1983 against a police officer who had allegedly given perjured testimony at the defendant's criminal trial)).  Accordingly, these claims will be dismissed with prejudice.

7127649, at *4 (E.D. Pa. Oct. 12, 2022) ("[T]he Court will dismiss any malicious prosecution claims because, at this time, the charges in question have not terminated in Hoyle's favor.").

## IV.    CONCLUSION

For the foregoing reasons, all claims against the State of Pennsylvania, the Lehigh County DOC, the LCJ Mail Room, the City of Allentown, PrimeCare, and U.S. Marshal Doe will be dismissed with prejudice and these Defendants will be terminated from this case.  All official capacity claims, all claims asserting violations of the Pennsylvania Constitution, PREA, the Equal Protection Clause, and the inmate handbook and/or internal prison procedures; and, all claims based on *Monell* liability, negligence under the First and Fourteenth Amendments, a cell search, property loss, witness testimony, and the grievance process will also be dismissed with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile").  His claims for malicious prosecution and claims brought on behalf of others will be dismissed without prejudice.

The Court is prepared to direct service of the Complaint on Williford's remaining allegations asserting claims for a civil conspiracy, failure to protect, deliberate indifference to a serious medical need, excessive force, false arrest/imprisonment, retaliation, placement in disciplinary segregation, conditions of confinement, retaliation, access to courts, and related claims under state law.

An appropriate Order follows, which provides further information about proceeding in this case.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**